Dear Mayor Anderson:
You advise this office that you are the elected mayor of the Village of Sicily Island, a Lawrason Act municipality. Your question concerns the legality of the use of public funds for the payment of attorneys' fees for all parties to the lawsuit referenced in your recent letter to this office.
Specifically, the dispute arose among the members of the Sicily Island Board of Aldermen and concerned the legality of the appointment of an interim mayor to fill a vacancy created in that office by virtue of the former mayor's recall. Indeed, this office issued a legal opinion to the governing authority of the Village of Sicily Island concerning the issue on January 26, 2001. See Attorney General Opinion 01-36, copy attached.
On January 31, 2001, Mr. Tim Ford, an alderman of the Village of Sicily Island, filed suit against Ms. Emma Hilliard and Ms. Excelena Williams, the other two aldermen of the Village, alleging that these aldermen had held clandestine meetings in violation of the Open Meetings Law, in order to illegally select an interim mayor. An answer and reconventional demand was filed by the defendants. The trial court granted plaintiff's request for a temporary restraining order which was overturned by the appellate court. The Village Board of Aldermen thereafter named an interim mayor. The Village then filed a new petition for intervention, seeking judgment against Tim Ford for the attorneys' fees of the Village.
The matter has yet to proceed to trial on the merits. However, all parties to the lawsuit have agreed to a settlement of the issues, and now seek reimbursement from the Village for payment of attorneys' fees.
R.S. 13:5108.1, et seq., provides for the indemnification of state officers and employees for financial loss arising out of claims, demands, suits or judgments where the officer or employee was "acting in the discharge of his duties and within the scope of his employment. . .". However, R.S. 13:5108.1, et seq., does not provide for the indemnification of the officers and employees of municipalities or other political subdivisions.
Despite the foregoing, this office has consistently determined that if a public official or employee is sued for civil damages and is found not liable and the allegations arose out of the performance of his official functions, then the public body that employs that person may pay the reasonable attorneys' fees and expenses that result from the defense against the suit. Attorney General Opinions Nos. 97-248, 96-398, 96-210, 96-95, 85-822. However, "public funds may be utilized to pay the legal expenses incurred by public officials and employees in connection with civil suits brought against them if and only after the defense of thelitigation is successful and if the allegations arose out of the performance of the official functions of the public officer or employee ". See Attorney General Opinion 97-491.
Note further that the Village of Sicily Island has no obligation or authority to reimburse expenses or attorneys' fees incurred by the aldermen individually, and such reimbursement would be considered a violation of the constitutional prohibition against the donation of public funds. See LSA Const. Art. VII, Section 14 (1974). However, Village funds may be utilized to reimburse attorneys' fees and expenses for those proceedings filed by the aldermen in their official capacities and for the benefit of the Village.
It is beyond the authority of this office to determine whether these actions were filed against or on behalf of the aldermen personally, (for which there should be no reimbursement) or against aldermen in their official capacities alleging malfeasance or misconduct in office. In the later scenario mentioned, the official would have to be exonerated of these allegations by final judgment in order for reimbursement to be proper. However, as mentioned above, Village funds may be used to reimburse those legal fees and expenses incurred by the aldermen where the action is brought for the benefit of the Village, notwithstanding the fact that the matter is resolved by settlement .
Thus, it is the opinion of this office that the Village, specifically, the Board of Aldermen, must carefully review the proceedings and make the necessary factual determinations. We have issued a similar conclusion in Attorney General Opinion 01-94, a copy of which we attach for your further review.
If the Village should decide to reimburse any or all of the legal expenses incurred by the parties, note that the Village will have to determine that (1) the hourly rate charged by legal counsel was reasonable, (2) the number of hours spend by legal counsel was reasonable and necessary, and (3) any costs incurred by legal counsel were reasonable and necessary. See Attorney General Opinions 01-94, supra, and 97-428, 95-492, 95-242, and 94-384.
Should you have other questions in which we may provide assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
OPINION NUMBER 01-36
January 26, 2001
 Syllabus
35 ELECTIONS 77 OFFICERS R.S. 18:602(A) and (D)
Responsive to questions concerning appointment of interim mayor to fill vacancy created in office of mayor by virtue of his recall.
Honorable Emma Hillard Mayor Pro Tem/Alderman P. O. Box 45 Sicily Island, LA 71368
Dear Mayor Pro Tem Hillard:
You have advised us that you serve as one of three aldermen for the village of Sicily Island, a Lawrason Act municipality. You also advise that you serve as Mayor Pro Tem, and that a special meeting has been called to appoint an interim mayor to the vacancy created by the recall of the former mayor.
In response to your first question, a mayor pro tempore retains his right to vote as an alderman. See Attorney General Opinions 93-669 and 93-398A, copies attached.
Our response to your first question obviates the necessity for a response to your second and third questions.
In response to your fourth question, the procedures governing the appointment are stated in the Election Code at R.S. 18:602(A) and (D), providing:
 § 602. Vacancies in certain local and municipal offices; exceptions
 A. When a vacancy occurs in the office of a member of a parish or municipal governing authority or a combination thereof, a mayor, or any other local or municipal office, except an office covered by Subsections B and C hereof and except the office of judge, state legislator, or marshal of a city or municipal court, and the office is filled by election wholly within the boundaries of a local governmental subdivision where the vacancy occurs shall, within ten days, appoint a person to fill the vacancy who meets the qualifications of the office. The presiding officer of the governing authority shall not be required to vote on such an appointment to be made by the governing authority of a local governmental subdivision unless a tie vote occurs thereon, in which case he shall vote to break the tie; however, in no case shall the presiding officer vote more than once on the appointment.
* * * * *
 D. If a vacancy is not filled within the time specified in Subsections A, B, or C herein, the governor shall fill the vacancy.
As the statute reflects, the mayor pro tempore is not required to vote as the presiding officer unless a tie vote occurs. In that circumstance, he shall vote as the presiding officer to break the tie, but in no case shall he vote more than once, as presiding officer, on the appointment.
In response to your fifth question, there is no prohibition in the Election Code preventing a person designated interim appointee in the office of mayor from becoming a candidate at the special election called to fill the office for the remainder of the term. See Attorney General Opinion 80-91, copy attached.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
OPINION NUMBER 93-669
November 16, 1993
 Syllabus
24 — ELECTIONS — Conduct of Primaries General 24-A — ELECTIONS — Recall 35 — ELECTIONS — Calling or ordering notice holding; Municipal general elections — time place of holding 77 — OFFICERS — Local Municipal; Selection, Qualifications Tenure; vacancies R.S. 18:602(F), R.S. 18:602(E)(2)(a), AGO 93-398A, AGO 93-698
Based on the October 16th election results, the governing authority of the Village of Powhatan shall proceed to make an appointment to fill the vacancy in the office of alderman, within ten days of the vacancy. (LSA-R.S. 18:602(A)). If the mayor is recalled at the November 13th election (see Opinion No. 93-698), the mayor pro tempore will not assume the mayor's vacancy, but act in the absence of the mayor. Additionally, the mayor pro tempore retains his right to vote to appoint a qualified person to fill the vacancy in the office of mayor. (See Op. No. 93-398 A). The governing authority shall issue a proclamation, within ten days of the vacancy, or vacancies (if applicable), calling a special election on October 1, 1994 (primary) and November 8, 1994 (general).
Honorable O. V. Hall Alderman/Mayor Pro Tempore Village of Powhatan Post Office Box 4043 Powhatan, Louisiana 71066
Dear Mrs. Hall:
Our office is in receipt of your request for an Attorney General's opinion regarding the legal responsibilities and duties of the governing authority for the Village of Powhatan. We will reiterate the facts from your letter of September 1, 1993. The Mayor of the Village of Powhatan and an aldermen are on the October 16th ballot for the question of recall. If the mayor and alderman are recalled, you have the following questions:
1. Will the mayor pro tempore assume the mayor's vacancy?
 2. Will two aldermen be appointed to fill vacancies, or will the council appoint a mayor and an alderman?
 3. Will the governing body have to issue a proclamation ordering a special election to fill the vacancies within ten days?
The Village of Powhatan is a Lawrason Act municipality. (LSA-R.S. 33:321
et seq.) Under the provisions of the Lawrason Act, R.S. 33:385, the law provides for a vacancy in the office of alderman to be filled pursuant to R.S. 18:602. Section 602 states, in pertinent part:
 A. When a vacancy occurs in the office of a member of a parish or municipal governing authority or a combination thereof, a mayor, or any other local or municipal office, . . . and the office is filled by election wholly within the boundaries of a local governmental subdivision, the governing authority of the local governmental subdivision where the vacancy occurs shall, within ten days, appoint a person to fill the vacancy who meets the qualifications of the office. The presiding officer of the governing authority shall not be required to vote on such an appointment to be made by the governing authority of a local governmental subdivision unless a tie vote occurs thereon, in which case he shall vote to break the tie; however, in no case shall the presiding officer vote more than once on the appointment.
* * *
 D. If a vacancy is not filled within the time specified in Subsections A, B, or C herein, the governor shall fill the vacancy.
 E.(1)(a) If the unexpired term of an office covered by Subsection A, B, or C above is one year or less, the person appointed to fill the vacancy or designated to assume the duties of the office shall serve for the remainder of the unexpired term.
 (2)(a) If the unexpired term exceeds one year, the governing authority of the local governmental subdivision in which the vacancy occurs, . . . within ten days after the vacancy occurs, shall issue a proclamation ordering a special election to fill the vacancy and shall specify in the proclamation, in accordance with R.S. 18:402, the dates on which the primary and general elections shall be held. In selecting the dates for such special elections, the governing authority, . . . shall first choose a gubernatorial or congressional election date. If no such date is available within a year of the occurrence of the vacancy, the governing authority, . . . shall then select an election date in accordance with R.S. 18:402. If the governing authority or school board fails to issue the proclamation within ten days after the vacancy occurs, the governor shall issue the proclamation.
* * *
We will respond to your questions based on the election results of the October 16, 1993 special election for the recall of Mayor Colvin and Alderman Colvin in the Village of Powhatan. In said election, the alderman was recalled by a vote of 44 to 42, and the recall of the mayor resulted in a tie. The question of recalling the mayor will be returned to the people on November 13, 1993. (See Opinion Number 93-698, enclosed herein.)
LSA-R.S. 33:405 provides for the board of aldermen to select one of the aldermen to be mayor pro tempore, who shall act in the absence of the mayor, with the same power and duties, except for the veto power of the mayor. A recent Attorney General Opinion, Number 93-398 A, concludes that the mayor pro tempore retains his power to vote as a councilman, absent a specific statutory prohibition. This opinion further concludes that "nothing in the Lawrason Act (Title 33 of the revised statutes Section 321 et. seq.) indicates that the mayor pro tempore assumes the office of mayor. He is temporarily vested with only the ability to perform some of the mayor's powers, functions and duties."
In response to your first question, if the mayor is recalled on November 13, 1993, it is the opinion of this office that the mayor pro tempore will not assume the mayor's vacancy, but act in the absence of the mayor until an appointment is made to fill the vacancy, in accordance with LSA-R.S. 18:602.
In response to your second question, since only the alderman was recalled at the October 16th election, there is only one vacancy to fill at this time. The governing authority shall, within ten days of the vacancy, appoint a qualified person to the office of alderman. (LSA-R.S.18:602(A))
As of this date, the governing authority consists of the mayor and the remaining two aldermen. However, the mayor is not required to vote on the appointment for the office of alderman unless a tie vote occurs. In that case, the mayor shall vote to break the tie; however, the mayor shall not vote more than once on the appointment. If the governing authority fails to make the appointment within ten days, the governor shall make the appointment. (LSA-R.S. 18:602(D))
If the mayor is recalled at the November 13th election, the governing authority shall, within ten days of the vacancy, appoint a qualified person to the office of mayor. At that time, the governing authority should consist of three aldermen (one who is the newly appointed alderman and one who serves as mayor pro tempore). The mayor pro tempore retains his right to vote as an alderman and also has the right to vote as the presiding officer; however, he is not required to vote as the presiding officer unless a tie vote occurs. In that case, he shall vote as the presiding officer to break the tie, but in no case shall he vote more than once, as presiding officer, on the appointment. If the governing authority fails to make the appointment within ten days, the governor shall do so. (LSA-R.S. 18:602(A) and (D)).
In reference to your third question, the unexpired terms of the mayor and alderman exceed one year. Therefore, it is our opinion that the governing authority shall issue a proclamation within ten days of the vacancy in the office of alderman, ordering a special election and specifying the dates for the primary and general elections. (LSA-R.S.18:602(E)(2)) The governing authority shall first choose a gubernatorial or congressional election date, if available within a year of the occurrence of the vacancy. There is a congressional election date available on October 1, 1994 (primary) and November 8, 1994 (general). If the governing authority fails to issue the proclamation within ten days after the vacancy occurs, the governor shall issue the proclamation calling the special election.
Additionally, if the mayor is recalled at the November 13th election, the governing authority shall issue a proclamation within ten days of the vacancy, ordering a special election for October 1, 1994 (primary) and November 8, 1994 (general). If the governing authority fails to issue said proclamation, the governor shall do so.
We have enclosed herein a copy of the relevant statutes, as per your request, and a copy of Opinion No. 93-398 A. If we can be of further assistance in this matter, please advise.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _____________________ ANGIE ROGERS LaPLACE Assistant Attorney General
RPI/ARL/pb/0017s
Enclosures
OPINION NUMBER 93-398A
July 29, 1993
71-1 — MUNICIPALITIES — Special Charters 77 — OFFICERS — Local Municipal R.S. 33:321 et seq, City of New Iberia Special Legislative Charter, R.S.33:405, CONST 2.2
Reaffirming Attorney General Opinion 93-398, the trustee appointed to serve as mayor pro tempore may continue to exercise his power to vote in his capacity as trustee, while simultaneously serving as mayor pro tempore. Inasmuch as Attorney General Opinion 90-149 is inconsistent with the conclusion of AG Opinion 93-398 and 93-398A, it is recalled.
Mr. John Jeffrey Simon Attorney at Law P.O. Box 9260 New Iberia, LA 70562-9260
Dear Mr. Simon:
In your letter of July 6, 1993, you indicated that you had relied upon Opinion 90-149 of this office in your rendering of advice to the City of New Iberia in your capacity as City Attorney.
Opinion 90-149 dealt with the issue as to whether R.S. 33:405 A(13), of the Lawrason Act, would operate to deny a municipal councilman, who was selected by his fellow councilmen to be mayor pro tempore, the right to exercise his power to vote as a councilman when he is acting as mayor pro tempore. Opinion 90-149 concluded that the mayor pro tempore may not vote in his capacity as a councilman while presiding over a meeting of the council as mayor pro tempore. The author reasoned that because the Lawrason Act provides that the mayor, when presiding over a council meeting, may only vote to break a tie, the mayor pro tempore, in the absence of the mayor may only perform the duties of the mayor. The rationale of Opinion 90-149 was that in the mayor's absence, the councilman/mayor pro tempore assumes the executive office of mayor and thereby becomes disqualified from exercising his legislative duties. Thus, the mayor pro tempore could only vote in the event of a tie vote of the council. The author of 90-149 relied upon a prior Attorney General's Opinion reported as, opinions of the Attorney General, 1944-1946, p. 616.
In the reported opinion it should be noted that the facts reflect that the municipal by-laws of the Town of Lockport required the convening of a minimum of the mayor and two councilmen. The opinion concluded that if one alderman and the mayor were both absent that the quorum could not be established because the municipality's rules of order required the convening of at least three persons. The rationale of that opinion does not clearly support the conclusion in Opinion 90-149 although it does allude to a provision in the Lawrason Act.
On reconsideration of Opinion 93-398 we now examine whether Opinion 90-149 is distinguishable from opinion 93-398, in light of the fact that New Iberia is governed by a special legislative charter.
The Lawrason Act provision R.S. 33:405 A(3) reads in pertinent part as follows:
 (3) The board of aldermen shall select one of the aldermen to be mayor pro tempore, who shall preside at all meetings in the absence of the mayor, have the same power, and perform all duties of the mayor in the absence or disability of the mayor, except the veto power of the mayor. (Emphasis added).
The New Iberia Charter provision reads in pertinent part as follows:
 (3) Mayor pro tempore. The trustee elected at large shall serve as mayor pro tempore, who, in the absence or inability of the mayor to act, shall exercise all the rights and powers of the office of mayor. (Emphasis added).
According to the two provisions quoted, the following is a summary of mode of selection and powers and functions of the mayor pro tempore.
LAWRASON ACT NEW IBERIA CHARTER
1. Board of aldermen select one 1. Trustee at-large ex officio of their members to be mayor is mayor pro tempore. pro tempore.
2. Presides at meeting in 2. Serves as mayor pro tempore mayor's absence. in mayor's absence or inability. (Sec. 14 of New Iberia Code 3. Has mayor's powers in his provides that the mayor presides absence. over meetings of the Board of Trustees).
4. Performs mayor's duties in 3. Exercises rights and powers his absence or disability. of mayor in absence or inability of mayor.
5. May not veto board's action.
We perceive no significant distinction between the mayor pro tempore's powers, functions and duties under the provisions of R.S. 33:405 or the New Iberia Charter. We are of the opinion that we must adhere to the conclusion reached in Opinion 93-398. First, we believe that Opinion 90-149 incorrectly reached the conclusion that because the mayor pro tempore "assumed" the office of mayor (due to the mayor's absence or inability) he was subject to incapacity to perform his legislative functions. We believe that conclusion is incorrect because nothing in the Lawrason Act (Title 33 of the revised statutes Section 321 et. seq.) indicates that the mayor pro tempore assumes the office of mayor. He is temporarily vested with only the ability to perform some of the mayor's powers, functions and duties. He cannot veto any action by the council as that power is always reserved to the office of mayor. Additionally, the separation of powers among three branches of government applies to state and not local governments (Article II, Louisiana Constitution).
In the absence of a specific statutory prohibitions that would prevent the mayor pro tempore from exercising his power to vote as a councilman he must be deemed to have retained that power. Otherwise, where a councilman is selected from a subdistrict within the municipality his constituency would be without representation which presents equal protection — one-person-one-vote complications. Furthermore, a crafty mayor might purposefully absent himself from any meetings at which the council was to consider overriding the mayor's veto of a council action, thereby increasing the already difficult burden of obtaining a two-thirds vote of the membership of the council that is legally required for an override. Finally, we believe that should the Legislature have intended, in adopting the Lawrason Act, or in New Iberia's special legislative charger, to prevent the mayor pro tempore from exercising his power to vote as a councilman while presiding over the council as mayor pro tempore, that body would have adopted such expressed prohibitions.
Therefore, it is our conclusion that whether according to the Lawrason Act or according to the New Iberia Special Charter a councilman, who is mayor pro tempore, may when presiding as such over a meeting of the municipal council, continue to exercise his power to vote as a councilman. This may result in his voting to make a tie.
Thus, it is the opinion of this office that our conclusion in Opinion 93-398 is reaffirmed. Inasmuch as 90-149 is inconsistent, herewith it is recalled.
Regarding your remaining question where in the absence of the mayor, the mayor pro tempore of New Iberia sought not to vote when the Board of Trustees was considering the override of a mayor's veto and the vote was four for the override and two against the override, it is our opinion that unless there is an explicit charter provision that permits, reconsideration of the vote such may not be reconsidered.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: _________________________ KENNETH C. DEJEAN Assistant Attorney General
KCD:ams:93-398A
OPINION NUMBER 80-91
January 23, 1980
77 — OFFICERS — LOCAL MUNICIPAL, VACANCIES R.S. 18:652 — 654; R.S. 18:602, R.S. 402
Bd. of aldermen advised how to proceed to fill a vacancy in office of mayor.
Mr. Anthony Lamonte Alderman, Village of Tickfaw Tickfaw, Louisiana 70466
Dear Mr. Lamonte:
In your letter of January 21, 1980, you state that the mayor of the Village of Tickfaw resigned on December 31, 1979. You state that you are now serving as mayor pro tem and ask for our advice on the procedure to be followed in appointing or electing a new mayor.
R.S. 18:652 through 654 provide the method for legally resigning a public office. These provisions state:
"Section 652. Resignations
 A. Except for members of the legislature and the congress, all resignations of elected officials shall be filed with the secretary of state. Resignations may be filed in person or by certified mail, return receipt requested.
 B. A resignation shall be in writing, shall be dated, may specify a prospective date on which the resignation is to be effective and shall be signed by the official and duly acknowledged by him before an officer authorized to administer oaths.
Section 653. Transmission of Resignations
 The secretary of state shall immediately transmit notice of resignations to the authority required by law to make the appointment to fill the vacancy and to the authority required by law to call the election to fill the vacancy, if said authority is not the same as the authority required to make the appointment.
Section 654. Effect of Filing of Resignations
 A resignation shall become irrevocable three days after the date on on which the secretary of state has transmitted the notice to the appropriate authority."
The Secretary of State for the State of Louisiana has not received the resignation of Nick Marino as Mayor of the Village of Tickfaw. Therefore, because the provisions of R.S. 18:652 through 654 have not been followed, Nick Marino is still the legal mayor of the Village of Tickfaw. Any purported resignation of Mr. Marino is not effective as the legal requirements for the submission of a resignation have not been followed.
Should Mr. Marino decide to send a proper resignation to the Secretary of State, this resignation will become effective three (3) days after the date on which the Secretary of State transmits notice of the resignation to the governing authority of the Village of Tickfaw. At this point, a vacancy in the office of mayor will exists and the Board of Aldermen of the Village of Tickfaw must take steps to fill this vacancy pursuant to the provisions of R.S. 18:602. (Copy enclosed)
Since the term of office for the Mayor for the Village of Tickfaw does not expire until June 31, 1982, it will be presumed that more than one year will exist on the unexpired portion of the term as of the date a vacancy will occur. Therefore, pursuant to R.S. 18:602, the Board of Aldermen of the Village of Tickfaw must, within ten (10) days after the vacancy occurs, issue a proclamation ordering a special election to fill the vacancy and specifying the date on which the primary and general elections will be held to fill the vacancy. The date selected for the holding of the primary and general elections must comply with the provisions of R.S. 18:402 (E). (Copy enclosed)
If a proclamation calling a special election i, s issued by the Tickfaw Board of Aldermen prior to July 12, 1980, the .primary election for the filling of this vacancy should be held on October 18, 1980, and the general election on November 29, 1980.
Additionally, should a vacancy occur, the Board of Aldermen of the Village of Tickfaw should appoint someone meeting the qualifications for the office to fill the position of mayor until the election can be held. The person filling this vacancy on an interim basis may qualify for this position at the subsequent election.
Should you be appointed to fill the position of mayor on an interim basis, you would have to resign your position as an aldermen of the Village of Tickfaw.
In answer to your last question, a copy of the 1974 Louisiana Constitution may be purchased from the Secretary of State's Office.
It is hoped this opinion has answered your questions. If we can be of further assistance, please contact us.
Sincerely,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: _____________________ TOMMY D. TEAGUE STAFF ATTORNEY
TDT/dyj
OPINION NUMBER 01-94
September 7, 2001
90-A-1 PUBLIC FUNDS CONTRACTS
Discussion of issues in connection with Town of Gramercy's reimbursement of attorney's fees incurred by aldermen and mayor.
Honorable Robert R. "Bobby" Faucheux, Jr. Louisiana House of Representatives, District 57 P. O. Box 367 Gramercy, Louisiana 70052
Dear Representative Faucheux:
This office is in receipt of your opinion request regarding the propriety of the Town of Gramercy's reimbursement of attorney's fees incurred by its Mayor and members of its Board of Aldermen, in connection with legal proceedings initiated by the Aldermen against the Mayor.
According to your correspondence, the Aldermen filed a petition for a restraining order and injunction against the Mayor, seeking to prohibit the Mayor from executing contracts that bind the Town of Gramercy before the Board of Aldermen approve the contracts. Subsequently, the Mayor hired counsel and filed an exception and answer and reconventional demand. Thereafter, the Aldermen filed an exception and answer to the Mayor's reconventional demand. As we understand your letter, judgment was rendered in favor of the Aldermen against the Mayor in connection with the Aldermen's petition, and the Mayor's exceptions and reconventional demand were dismissed.
You have requested that this office examine whether the Town of Gramercy can reimburse the fees incurred by the Aldermen, or by the Mayor, in connection with these legal proceedings, specifically with regard to: (1) the petition filed by the Aldermen and the hearing thereon, (2) the Exception and Answer filed by the Mayor, (3) the reconventional demand filed by the Mayor, and (4) the exception and answer to reconventional demand filed by the Aldermen.
R.S. 13:5108.1, et seq. provides for the indemnification of state officers and employees for financial loss arising out of claims, demands, suits or judgments where the officer or employee was "acting in the discharge of his duties and within the scope of his employment. . .". However, neither R.S. 13:5108.1, et seq., nor any other provision of state law of which we are aware, provides for the indemnification of the officers and/or employees of municipalities or other political subdivisions.
Nevertheless, this office has consistently opined that if a public official or employee is sued for civil damages and is found not liable and the allegations arose out of the performance of his official functions, then the public body that employs that person may, but does not have to, pay the reasonable attorneys fees and expenses that result from the defense against the suit. Attorney General's Opinions Nos. 97-248, 96-398, 96-210, 96-95, 85-822. See also: Atty. Gen. Op. 89-401, which determined that a public official acting beyond the course and scope of his duties is not entitled to attorneys fees for the defense of civil or criminal actions brought against him. It is the opinion of this office that public funds can be utilized to pay or reimburse the legal fees of a public official or employee who is or was the target of civil claim, as long as the allegations arose out of the performance of, as well as within the course and scope of, the official functions and duties of the public official or employee.
With regard to reimbursement of the Aldermen's attorney's fees, we note that the litigation in question was instituted by, not against, the Aldermen. Although as originally filed, the pleadings are styled in the individual aldermen's names, an amendment indicates that the litigation was filed by the plaintiffs in their capacities as Aldermen for the Town of Gramercy. The suit appears to have been filed not to provide relief to the Aldermen individually, but to enforce the authority granted to the Board of Aldermen by law to approve contracts before they are executed by the Mayor, similar in nature to a quo warranto proceeding. Additionally, we are advised that the District Attorney recommended filing of the suit, and that counsel to the Board of Aldermen represented the Aldermen in the proceedings.
This office is not a finder of fact, and it would be beyond the purview of this office to determine whether the proceedings filed by the Aldermen were filed personally, or in their official capacities. However, it is our advice that if it is properly determined that the Aldermen filed the proceedings against the Mayor in their individual capacities, then all fees incurred by the Aldermen in connection with the petition, the hearing thereon, and the answer thereto must be borne by the Aldermen personally, and are not reimbursable by the Town of Gramercy. On the other hand, if the Aldermen filed the proceedings in question in their official capacities, then the Town could reimburse the expenses incurred by the Aldermen in connection therewith.
An examination of the reconventional demand filed against the Aldermen by the Mayor indicates that the allegations contained therein primarily allege misconduct in office by the individual Aldermen. Specifically, the Mayor alleges that each Alderman engaged in acts of "misfeasance, malfeasance and nonfeasance" in office. As such, although this office is not a finder of fact, it appears that the allegations arise out of the performance of the Aldermen's official functions.
You have advised that the Aldermen were successful in their defense of the reconventional demand, and that all charges filed against them by the Mayor were dismissed. As such, if the allegations made by the plaintiff arose out of the performance of, as well as within the course and scope of, the official functions and duties of the Aldermen, it is our opinion that the Town of Gramercy may (but does not have to) reimburse the Aldermen for the attorneys fees they incurred in their defense of the reconventional demand.
As to the fees incurred by the Mayor in connection with his defense of the action filed against him and his reconventional demand, it is beyond the purview of this office to determine whether his actions giving rise to the litigation, or actions taken in the litigation were taken personally, or in the Mayor's official capacity on behalf of the Town. Pleadings filed in the Mayor's individual capacity, and the attorney's fees incurred in connection therewith would not be reimbursable by the Town. However, if it is properly determined that the Mayor's actions which gave rise to the Aldermen's petition were taken in his official capacity, the attorney's fees incurred in connection with his defense of the petition could be (but are not required to be) reimbursed by the town. Similarly, if the reconventional demand was filed in his official capacity and on behalf of the Town, then the Town could (but does not have to) reimburse the Mayor for the expenses he incurred in connection therewith.
Since the Aldermen were represented by the same attorney in connection with their petition as well as the reconventional demand filed against them, care should be taken to determine which portions of their attorney's fees, if any, are reimbursable. Similarly, since the Mayor was represented by the same attorney in connection with his answer and exception and reconventional demand, care should be taken to determine which portions of his attorney's fees, if any, are reimbursable.
The Town has no obligation or authority to reimburse expenses or attorney fees incurred by the Aldermen or the Mayor individually, and the Town's reimbursement of the individual or personal legal fees incurred by the Aldermen or the Mayor would be a violation of La. Const. Art. VII, Sec. 14. In accord: Attorney General's Opinion No. 95-242. Of course, as to any proceedings determined filed by either the Aldermen or the Mayor in their official capacities and for the benefit of the Town, this issue should not pose a problem.
If the Town does decide to reimburse all or a portion of the legal expenses incurred by the Aldermen or the Mayor, the Town will also have to determine that: (1) the hourly rate charged by the Aldermen's counsel was reasonable, (2) the number of hours spent by counsel was reasonable and necessary, and (3) any costs incurred by counsel were reasonable and necessary. Attorney General's Opinions Nos. 97-248, 95-492, 95-242, and 94-384.
We trust the foregoing to be of assistance. Please do not hesitate to contact us if we can be of help in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ___________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI/JMZB/jv
DATE RECEIVED:
DATE RELEASED: September 7, 2001
OPINION NUMBER 97-491
March 17, 1998
90-A-1 PUBLIC FUNDS CONTRACTS
Discussion of issues in connection with municipality's reimbursement of Police Chief's attorneys fees.
Honorable Truman M. Durr, Mayor Village of Pleasant Hill P.O. Box 125 Pleasant Hill, LA 71065
Dear Mayor Durr:
This office is in receipt of your recent opinion request regarding the propriety of the Village of Pleasant Hill's reimbursement of its Chief of Police for attorney's fees incurred in his defense of a civil lawsuit involving federal charges of sexual harassment. Specifically you ask the following questions:
1. Was the alleged offense against the Chief of Police considered committed during the performance of, as well as within the course and scope of, the official functions and duties of his position as Chief of Police?
2. Would payment of legal fees be in order since the Chief chose to retain "private counsel"?
3. Would the suit be considered settled and final, and payment be in order since plaintiff's attorney has filed a motion to overturn the jury's verdict?
4. Was there an ethics violation committed or at the least, a conflict of interest involved in voting on the resolution to pay the Chief's legal fees by one of the Aldermen because he is the chief's nephew? Should said Alderman have recused himself from the issue or abstained voting?
5. Did the Aldermen err in authorizing payment of $15,000 in legal expenses for the Chief's separate civil suit and has a misuse of public funds been committed?
With regard to your first question, we must respectfully advise that we are not in a position to provide you with an answer. The question of whether particular acts committed by a municipal officer or employee were committed during the performance of, as well as within the course and scope of, the official functions and duties of his position is fact-sensitive and can only be answered by finders of fact, such as courts of law. Although this office is happy to address questions of law, we are not finders of fact.
In answer to your third question, it is the opinion of this office that litigation is not successfully concluded until the time for the filing of all motions and appeals has passed.
Your fourth question would be more appropriately addressed by the Ethics Administration, and we suggest that you contact them directly. By copy hereof, we are, however, making the Ethics Administration aware of this advice.
In response to your fifth question, it is the opinion of this office that as long as the Chief of Police was exonerated of all charges in this matter, the Board of Aldermen could reimburse him for the reasonable legal expenses he incurred in defending the suit, as long as the allegations against him arose during the performance of, and out of the course and scope of his employment, and as long as the litigation was successfully concluded in the Chief's favor at the time payment was made. In order to determine that the legal expenses incurred by the Chief were reasonable, the Board of Aldermen would have to determine that: (1) the hourly rate charged by counsel was reasonable (and although the Attorney General's Maximum Hourly Fee Schedule, enclosed herewith, is not controlling it may assist the Aldermen in making that determination), (2) that the number of hours spent by counsel was reasonable and necessary, and (3) that any costs incurred by counsel were reasonable and necessary. Atty. Gen. Ops. Nos. 96-95, 95-492, 95-242.
We hope that this addresses your concerns. Should you have further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv Attachment cc: Ethics Administration
DATE RECEIVED: October 29, 1997 DATE RELEASED:
JEANNE-MARIE ZERINGUE BARHAM, ASSISTANT ATTORNEY GENERAL
State of Louisiana DEPARTMENT OF JUSTICE Baton Rouge RICHARD P. IEYOUB 70804-9005 ATTORNEY GENERAL
January 30, 1992
TO: ALL INTERESTED PERSONS
FROM: RICHARD P. IEYOUB
RE: MAXIMUM HOURLY FEE SCHEDULE
This is to advise all interested persons that the approved Maximum Hourly Fee Schedule of this office for professional legal services shall be as follows:
$150.00 PER HOUR FOR ATTORNEYS HAVING EXPERIENCE OF TEN YEARS OR MORE IN THE PRACTICE OF LAW
$135.00 PER HOUR FOR ATTORNEYS HAVING EXPERIENCE OF FIVE YEARS OR MORE IN THE PRACTICE OF LAW
$120.00 PER HOUR FOR ATTORNEYS HAVING EXPERIENCE OF THREE TO FIVE YEARS IN THE PRACTICE OF LAW
$100.00 PER HOUR FOR ATTORNEYS HAVING EXPERIENCE OF LESS THAN THREE YEARS IN THE PRACTICE OF LAW
$ 45.00 PER HOUR FOR PARALEGAL SERVICES
$ 25.00 PER HOUR FOR LAW CLERK SERVICES.
RPI/JEY/MSH/jv 2578m
OPINION NUMBER 98-51
March 17, 1998
9 — Civil Service Commission 7 — Officers — Local Municipal
R.S. 33:404
R.S. 33:2533
A mayor has the discretion to appoint a citizens committee for a fact finding project and advise him based upon their findings, but they cannot take action on their own.
Mr. Bobby Abrusley, Mayor City of Oakdale P.O. Box 728 Oakdale, LA 71463
Dear Mayor Abrusley:
This office is in receipt of your request for an opinion of the Attorney General in regard to your power to appoint a five member Citizen's Investigative Committee to inquire into an incident involving three of the city's police officers. You indicate that the Sheriff and District Attorney are presently investigating the incident, and you feel a Citizen's Investigative Committee may impair this official investigation.
Obviously you may appoint individuals of your choice to constitute a citizen committee for fact finding studies and to render advice based upon their findings, but they would have no power to take action on their own. However, the advisability of having such a committee is solely within your discretion.
Inquiry has indicated that Oakdale is a Lawrason community that now has an elected Chief of Police, having had until recently an appointed Chief of Police. Under R.S. 33:404(A) the mayor has the duty and responsibility "to appoint and remove municipal employees" subject to applicable civil service rules. We have been informed that civil service was adopted approximately twenty years ago for the Oakdale police department, and they operate in accordance with the provisions for civil service for municipalities between 7,000 and 13,000 population. The mayor would be the "appointing authority" for the police civil service personnel as is defined in R.S.33:2533 as the "person having the power to make appointments to positions in the municipal, parish or fire protection district fire service", Atty. Gen. Op. No. 91-93.
However, while the mayor may be the appointing authority under the civil service the law, R.S. 33:2537 provides in part that the Civil Service Board represents the public interest in matters of personnel administration, is to advise and assist the mayor, and they are to conduct investigations and pass upon complaints by or against any officer or employee in the classified service, R.S.33:2537. Moreover, while R.S. 33:2560 provides that the tenure of persons in positions of classified service "shall be during good behavior" and the "appointing authority may remove any employee from the service or take such disciplinary action as circumstances warrant", the statute further provides that upon written request of any qualified elector the Board shall "make an investigation of the conduct and performance of any employee in the classified service, and thereupon, may render such judgment and order action to be taken by the appointing authority."
Consequently, it appears that the proper investigatory body to investigate the conduct of police as civil service employees is the Civil Service Board and the Mayor must abide by their directive.
Also, any charge for criminal action is not a matter for the Mayor who is the chief executive officer of the community, but is a matter for law enforcement officials and the district attorney, and it is our understanding that they are already investigating the incident in question.
Therefore, your authority as the executive officer of the community would be limited to appointment of committees for fact finding inquires, and they in turn could render advice to you based upon conclusions drawn from the facts. Obviously, they would have no authority for any independent action, and your action would be limited by statutory provisions as to your powers and duties.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR
Date Received: September 15, 1997 Date Released:
BARBARA B. RUTLEDGE Assistant Attorney General
OPINION NUMBER 97-428
November 12, 1997
71 MUNICIPALITIES90-A-1 PUBLIC FUNDS CONTRACTS90 POLICE JURIES — Powers and functions
ART. VII, § 14(A); R.S. 33:621 33:1324(2), (3) (6)
Municipalities have the authority to install culverts in drainage ditchesfor a public purpose and in the public's interest, as distinguished froma purely private purpose. Although a project may indirectly benefit aprivate landowner, it would not be prohibited solely on this basis,provided there is a public purpose for the work.
Honorable Lucas Denais Mayor, Town of Youngsville P.O. Box 592 305 Iberia Street Youngsville, LA 70592
Dear Mayor Denais:
This responds to your request for an opinion pertaining to the propriety of the Town of Youngsville installing culverts in a drainage ditch on private property where the Town believes the improvements to be in the public interest, as set forth in Ordinance No. 213 of September 11, 1997.
While no explicit statement was made as to how the improvements would be in the public interest, we will assume that the proposed work would relieve drainage problems within the Town of Youngsville, as well as on the private landowner's property.
The most authoritative statement of law which applies to this area is found in Art. VII, § 14(A) of the Louisiana Constitution of 1974, which prohibits the use of funds, credit or property of public entities from being used for a purely private purpose. The constitutional provision states as follows:
 Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
Therefore, funds, credit or property of the Town of Youngsville may be used only for a public purpose and in the public interest, not for a purely private purpose. Although a project may indirectly benefit a private landowner, it would not be prohibited on this basis, provided there is a public purpose for the work.
Prior opinions of this office have allowed the use of public funds insofar as it is necessary to insure efficient drainage through the installation of culverts at the proper elevation and grade, and then only when in the public interest, that is, when such would be necessary for the ". . . welfare of the city . . .". See La.R.S. 33:621 and 33:1324(2), (3) and (6). Under this circumstance, the Town could furnish the labor necessary to installation of the culverts, but not the gravel, culverts and other materials customarily furnished by private landowners. Of course, if a major project contemplating work for a drainage system serving all residents in the area was at issue, our answer might be different.
However, as we understand the current situation, the work under consideration is for a single landowner who is abutted by landowners on both sides who have paid the costs for the installation of culverts across their property.
This office has consistently held that a public entity would have no legal authority to furnish labor or materials for construction work or development which primarily benefits purely private interests, as distinguished from a public purpose in the public interest. Therefore, if the Mayor and Board of Aldermen have correctly made the public purpose determination, the use of public finds and resources would be authorized.
Our conclusions stated above would be different if the works are not for a public purpose to benefit the public interest, but for a purely private interest. Each factual situation must be reviewed on its own merits to determine whether a public purpose truly exists. See Opinions of Attorney General 74-1350; 76-1026; 77-307; 77-392; 77-1394; 78-425; 88-375; 93-396; etc.
We hope that this information is of benefit to you and if we may be of further help, please call upon us at any time.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ GARY L. KEYSER Assistant Attorney General
RPI/GLK:bb
OPINION NUMBER 95-492
December 4, 1995
90-A POLITICAL SUBDIVISIONS — Officers, Agents Employees90-A-1 PUBLIC FUNDS CONTRACTS
Fire Protection District may reimburse fire chief for legal expenses incurred in connection with a quo warranto
proceeding which results in a final judgment in favor of the Chief.
Hon. Tom Greene, DVM State Senator, District 17 P.O. Box 338 Maringouin, Louisiana 70757
Dear Senator Greene:
Reference is made to your recent request for an opinion of this office regarding attorney's fees incurred by Fire Chief Carl Smith in connection with a quo warranto proceeding brought against him by Mr. Homer Jones and the Town of Fordoche. We are advised that the quo warranto challenged Chief Smith's right to the office of Chief, but the trial court upheld Chief Smith's right to office. The court did, however, deny Chief Smith's request for attorney's fees. Subsequently, Chief Smith requested that the Fire District which employs him reimburse him for his attorney's fees.
Specifically, we are asked to opine upon the legality of the reimbursement of the attorney's fees by Fire Protection District No. 4 (the "District"), the public body that employs Chief Smith. For purposes of responding to your request, we assume that the judgment of the trial court is now final and unappealable.
This office has consistently opined that if a public official or employee is prosecuted for a criminal offense and is found not guilty, and the alleged offense arose out of the performance of his official functions, then the public body which employs that person may pay the reasonable attorney's fees and expenses that result from the defense against such charges. Atty. Gen. Ops. Nos. 94-384, 93-376, 91-474, 89-110.
Applying that reasoning, it is the opinion of this office that the District may reimburse the legal expenses incurred by the Chief in connection with the quo warranto
proceedings, since the final judgment of the court determined that the Chief was entitled to the office of Chief.
If the District decides that it does want to reimburse the Chief for his legal expenses in connection with the quo warranto proceeding (the District can choose not to reimburse the Chief), then it must also determine: (1) that the hourly rate charged by the Chief's counsel was reasonable (enclosed herewith is a copy of the Attorney General's Maximum Hourly Fee Schedule which may assist the District in making such a determination), (2) that the number of hours spent by counsel were reasonable and necessary, and (3) that any costs incurred by counsel were reasonable and necessary.
We trust the foregoing to be responsive to your request. Please do not hesitate to contact us if we can be of assistance in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv
OPINION NUMBER 95-242
July 7, 1995
90-A-1 PUBLIC FUNDS CONTRACTS
La. Const. Art. VII, Sec. 14; R.S. 13:5108.3
Since public employee was exonerated of one of two allegations under investigation by the Ethics Commission, and the Ethics Commission declined to investigate the other allegation and closed its file, Department of Wildlife and Fisheries would not be prohibited from reimbursing employee's legal fees.
Mr. Joe L. Herring, Secretary Department of Wildlife and Fisheries P.O. Box 98000 Baton Rouge, Louisiana 70898-9000
Dear Mr. Herring:
Reference is made to your request for an Attorney General's opinion regarding the propriety of the reimbursement by the Department of Wildlife and Fisheries (DWF) of an employee's attorney fees incurred by the employee in connection with a recent Ethics Commission probe involving the employment of the employee's son. Apparently, the Ethics Commission considered two separate alleged violations: (1) the employment of the son in a division (administered by the employee in question) of DWF, and (2) the employment of the son by Louisiana State University ("LSU") in a program administered by DWF.
You have provided us with a copy of a letter from the Ethics Commission (the "Letter") which indicates that the Ethics Commission, with regard to the son's employment by DWF, "believes (the] employment . . . was prohibited under Section 119 (sic] of the Code. . . ." We also note, however, that the Ethics Commission "declined to investigate the matter further." With regard to the son's employment by LSU, the Ethics Commission concluded that "no evidence was discovered indicating a violation of the Code." The Letter further indicates that the Ethics Commission's file in connection with these matters "has now been closed."
R.S. 13:5108.2 provides for the indemnification of state officers and employees for financial loss arising out of "any claim, demand, suit or judgment in any court" where the officer or employee was "acting in the discharge of his duties and within the scope of his office, employment. . . ." In accordance with R.S. 13:5108.3, the legal fees of such officers or employees, incurred in the defense of criminal matters, can only be paid from public funds if the officer or employee is acquitted or the proceedings are dismissed, and the payment is authorized by a specific act of the legislature. These provisions of law do not specifically address the reimbursement of legal fees incurred by state officers or employees in connection with Ethics Commission proceedings.
Nevertheless, this office has opined that if a public official or employee is exonerated of all allegations under investigation by the Ethics Commission, then the public entity which employs that individual may reimburse its employee for legal expenses incurred in connection with the investigation. Atty. Gen. Op. Nos. 94-369 and 94-369A.
Although your employee was exonerated of one, but not "all" allegations, the Ethics Commission's decision to decline to fully investigate the first allegation and close its file in connection therewith, is equivalent to a dismissal of the proceedings in a criminal matter. As such, we are of the opinion that the Department would not, based on the action taken by the Commission, be prohibited from reimbursing its employee for the legal fees he incurred.
We caution you, however, that it appears that your employee and his son were both before the Ethics Commission, and that they were both represented by the same attorney. Unless you can determine with certainty the amount of legal fees incurred on behalf of your employee, as opposed to those incurred for the benefit of his son, you should not reimburse any of the legal fees expended in this matter. DWF has no obligation or authority to reimburse legal expenses paid in connection with the representation of your employee's son. La. Const. Art. VII, Sec.14.
If you decide to reimburse your employee, and you can determine the amount of attorneys fees incurred strictly on behalf of your employee, then you must also determine: (1) that the hourly rate charged by the employee's counsel was reasonable (enclosed herewith is a copy of the Attorney General's Maximum Hourly Fee Schedule which may assist you in making this determination), (2) that the number of hours spent by counsel were reasonable and necessary, and (3) that any costs incurred by counsel were reasonable and necessary.
Your request indicates that it is your belief that this office would have to approve an itemized statement for any attorney fees you decide to reimburse. Please be advised that it would be inappropriate for you to submit such a statement to this office for approval. Although this office must approve the employment of counsel retained to represent the state and its agencies, it is beyond the purview of this office to review or approve statements for legal services incurred on behalf of individual employees.
Trusting the foregoing to be of assistance, we remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv
OPINION NUMBER 94-384
August 9, 1994
90-A POLITICAL SUBDIVISIONS — Officers, Agents Employees 90-A-1 PUBLIC FUNDS CONTRACTS 90-A-2 PUBLIC FUNDS — Loan, Pledge of Grants
Town of Ferriday may reimburse its former Mayor for attorney fees incurred in defense of criminal charges arising out of his employment if he is found not guilty.
Mr. Henderson Cook, Jr. Council Member Town of Ferriday 212 North Second Street Ferriday, Louisiana 71334
Dear Mr. Cook:
This office is in receipt of your request for the opinion of this office regarding reimbursement of the attorney's fees incurred by former Mayor Sammy Davis, Jr., in connection with the successful defense of criminal charges arising out of the performance of his duties as Mayor. Specifically, you ask whether the Town of Ferriday may legally reimburse Mr. Davis for the attorney's fees in question.
This office has consistently opined that if a public official or employee is prosecuted for a criminal offense and is found not guilty and the alleged offense arose out of the performance of his official functions, then the public body that employs that person may pay the reasonable attorney's fees and expenses that result from the defense against such charges. Atty. Gen. Op. No. 93-376, 91-474, 89-110.
It appears that the charges brought against former Mayor Davis arose out of action taken by him in the course of performing his official duty. We also note that the hourly rate charged by the Mayor Davis' counsel (in accordance with the statement enclosed with your request) is reasonable, as the hourly rate does not exceed the Maximum Hourly Rates chargeable in accordance with the Maximum Hourly Fee Schedule of this office. As such, if the Town of Ferriday determines that the number of hours spent was reasonable and necessary, and that the costs incurred were reasonable and necessary, it is the opinion of this office that the Town of Ferriday can reimburse Sammy Davis, Jr. for the attorney's fees in question.
I am enclosing herewith a copy of Atty. Gen. Op. No. 94-276, as it is factually related to your request. In spite of our opinion herein regarding reimbursement of the attorneys' fees in question by Mr. Davis' former employer, the Town of Ferriday, it remains the opinion of this office that the State of Louisiana is constitutionally prohibited from reimbursing Mr. Davis for those fees.
Trusting this adequately responds to your request, we remain,
Yours very truly,
 Richard P. Ieyoub Attorney General
 By: Jeanne-Marie Zeringue Barham Assistant Attorney General
OPINION NUMBER 94-276
June 30, 1994
90-A — POLITICAL SUBDIVISIONS — Officers, Agents Employees 90-A-2 — PUBLIC FUNDS — Loan, Pledge or Grants CONST 7.14(A), R.S. 13:5108.1, R.S. 13:5108.2, R.S. 13:5108.3
The expenditure of state funds for the payment of legal expenses incurred by a former municipal officer is not permissible under state law.
Senator B. B. "60" Rayburn Chairman, Joint Legislative Committee on the Budget P.O. Box 44294, Capitol Station Baton Rouge, Louisiana 70804
Dear Senator Rayburn:
This office is in receipt of your request for an opinion regarding an amendment to the General Appropriation Bill of 1994. The pertinent portion of the amendment, styled Amendment No. 203, provides as follows:
 "Payable out of the State General Fund (Direct) to pay for attorney fees and expenses for defense for Sammy Davis, Jr., only if and when the Attorney General certifies that this expenditure is permissible under state law . . . . . . . . . . $129,647"
In accordance with Amendment No. 203, the question presented for our review is whether the State of Louisiana can pay the legal expenses incurred by the former Mayor of the Town of Ferriday in defense of three counts of malfeasance in office. Although Mr. Davis was convicted of one count of malfeasance in office, the Supreme Court ultimately reversed his conviction.
R.S. 13:5108.1, 13:5108.2 and 13:5108.3 provide for the indemnification of state officers and employees, subject to certain criteria, including payment of legal fees for the defense of criminal matters when the defendant is acquitted. However, this office is unaware of any provision of law which would authorize or require the State to provide for the reimbursement of legal expenses incurred by an officer or former officer of a political subdivision, such as the former Mayor of Ferriday.
We must also advise that the State's payment of legal fees incurred by a former municipal officer, as opposed to a state officer, would be subject to constitutional challenge under the provisions of La. Const. Art. VII, Sec. 14(A). As I am sure you are aware, this provision of the Constitution prohibits the state and its political subdivisions from loaning, pledging or donating public funds to any person, public or private.
This provision has been interpreted by the Supreme Court in City of Port Allen v. Louisiana Municipal Risk Agency, 439 So.2d 399
(La. 1983), which held that the Constitution is violated whenever the state or a political subdivision seeks to give up something of value when it is under no obligation to do so.
This office is unaware of any substantive provision of law that obligates or authorizes the use of state funds to reimburse legal expenses incurred by an officer or former officer of a political subdivision. As such, it is the opinion of this office that the expenditure of State funds for the payment of legal expenses incurred by a former municipal officer is not "permissible under state law."
We trust this adequately responds to your request. Please do not hesitate to contact us if we can be of further assistance.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
BY: JEANNE-MARIE ZERINGUE Assistant Attorney General RPI:JMZ:jav 444n